IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN S. YATSKO, et al. :
:
           Plaintiffs : CIVIL ACTION
:
v. :
: NO. 09-CV-0141
OFFICE OF WORKERS :
COMPENSATION PROGRAMS, U.S. :
DEPT. OF LABOR, et al. :
:
           Defendants :

## MEMORANDUM OPINION AND ORDER

GOLDEN, J.                                                                                                  APRIL 28, 2010

Before the Court is Plaintiffs' request for declaratory and injunctive relief. Specifically, Plaintiffs seek a judicial order enjoining the Defendants from denying the payment of benefits to the Plaintiffs under the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"), codified at 42 U.S.C. § 7384, et seq., which is administered by the United States Department of Labor ("DOL"). (Compl.[1] ¶ 1.) For the following reasons, Plaintiffs' request is denied.

**I.    BACKGROUND**

Plaintiffs, John S. Yatsko and Samuel H. Moatz, are residents of the Reading, Pennsylvania area and former employees of NGK Metals Corporation ("NGK") and its predecessors, which contracted with the Department of Energy ("DOE") to manufacture beryllium at a facility in Reading (the "Reading Plant"). (Compl. ¶¶ 3-4, 13, 20.) Plaintiffs

---

[1]"Compl." refers to Plaintiffs' "Complaint for Injunctive and Declaratory Relief." (Doc. No. 1.)

allege that they contracted illnesses as a result of exposure to beryllium.[2] (Compl. ¶¶ 3-4, 12-13.) As a result of Plaintiffs' claims, the DOL's Office of Workers Compensation Programs ("OWCP") awarded Plaintiffs medical benefits. (Compl. ¶¶ 14, 21.)

On June 4, 2003, Plaintiffs filed a lawsuit in the Court of Common Pleas of Philadelphia County against a number of companies, including NGK, arising from their exposure to beryllium in Reading (Compl. ¶¶ 15, 22.), alleging that Plaintiffs "resided and/or worked in close proximity to the [Reading P]lant, and/or had contact with others who worked within the Reading Plant," (AR[3] at 000137, ¶ 55; 000435, ¶ 55), and that "[d]uring each of the plaintiffs' residence and/or employment and/or contact with persons who were employed at the Reading Plant, they were exposed to unlawful, dangerous and unhealthful emissions resulting in serious and permanent injury, or the need for medical monitoring . . . ." (AR at 000138, ¶ 65; 000436, ¶ 65.) Plaintiffs also alleged that "occupational and non-occupational exposure" resulted in their diagnosed illnesses. (AR at 000142, ¶ 80(a); 000445, ¶ 80(ooo).)

In response, on December 28, 2005 and March 28, 2006 respectively, because of Plaintiffs' failure to dismiss disqualifying tort suits in violation of 42 U.S.C. § 7385d, the OWCP vacated its Orders granting Plaintiffs benefits. (AR at 000207-000211; 000621-000625.) On January 31, 2006, the OWCP issued a new recommended decision to terminate Yatsko's benefits. (AR at 000614-000618.) Thereafter, Yatsko submitted written objections. (AR at

---

[2]Yatkso was diagnosed with beryllium sensitivity ("BS") in 2000 and chronic beryllium disease ("CBD") on September 28, 2001. (Compl. ¶ 12.) Moatz was diagnosed with BS on March 6, 1998. (Compl. ¶ 19.)

[3]"AR" refers to the relevant DOL certified Administrative Record filed here under seal. (Doc. No. 11.)

000521-000595.) A final decision denying Yatsko's claims and retroactively terminating his medical benefits, effective June 22, 2003, was issued on March 22, 2007. (AR at 000374-000378.)

On April 16, 2006, the OWCP recommended terminating Moatz's benefits effective June 4, 2003. (AR at 000200-000204.) Although Moatz objected to the OWCP's initial decision, (AR at 000179-000196), Moatz's benefits were terminated, effective June 4, 2003, on September 16, 2006. (AR at 00042-00046.) On October 12, 2006, Moatz requested that the OWCP reconsider its final decision. (AR at 000016-000026.) The OWCP denied the reconsideration request on August 3, 2007. (AR at 000011-000012.)

On January 12, 2009, Plaintiffs filed the instant action, claiming that the retroactive termination of their payments is in direct contravention of a memorandum opinion by an Associate Solicitor for Employee Benefits for the Department of Labor (the "Depenbrock Memo") and, therefore, is "not in accordance with law under 5 U.S.C. § 706(2)(A)." (Compl. ¶¶ 18, 25, 27, 30.)

## II.    APPLICABLE LAW

In October 2000, Congress enacted the EEOICPA for the purpose of compensating individuals with illnesses attributable to exposure to toxic substances, such as beryllium, while working for DOE facilities or facilities of designated DOE contractors, subcontractors, and vendors. See 42 U.S.C. § 7384, et seq. Under this Act, Yatsko and Moatz were entitled to lifetime medical benefits for treatment of their conditions. See 42 U.S.C. §§ 7384i, n, and s.

However, the EEOICPA expressly bars an otherwise eligible individual who files suit against his employer for an occupational-based beryllium-related illness after December 28, 2001

3

from receiving benefits if that individual's suit remains pending after April 20, 2003, or thirty (30) months after the individual is diagnosed with CBD or BS, whichever date is later.[4] See 42 U.S.C. §§ 7385b, d. In essence, the statute requires individuals suffering from occupational illnesses to choose between collecting benefits from the DOL or recovering damages from their employers. Non-occupational injuries may be litigated regardless of the status of an employee's occupational exposure claim.

## III.     STANDARD OF REVIEW

The applicable portion of the EEOICPA does not contain a standard of review provision. Therefore, the Court must look to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06, to determine the appropriate standard of judicial review of this agency action. See Delaware Citizens for Clean Air, Inc. v. Administrator U.S. E.P.A., 480 F.2d 972, 975-76 (3d Cir. 1973).

In the present case, the question is whether the DOL's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this standard, the agency's action is presumed valid, SBC Inc. v. FCC, 414 F.3d 486, 496 (3d Cir. 2005) (quoting Southwestern Bell Tel. Co. v. FCC, 168 F.3d 1344, 1352 (D.C. Cir. 1999)), and will be considered arbitrary and capricious only where it is not supportable by record evidence, or if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 393 (3d Cir. 2000) (citations and internal quotation marks omitted). In making its determination, the Court is restricted to reviewing the

---

[4]Plaintiffs' deadlines to dismiss the alleged occupational tort suits were as follows: (1) Yatsko - June 22, 2003; and (2) Moatz - April 30, 2003. Yatkso failed to dismiss his case before his deadline expired. Moatz, who filed his suit after his deadline had passed, never had the opportunity to dismiss his suit.

certified administrative record. (Doc. No. 12 at 3.)

## IV. ANALYSIS

In support of its termination of Plaintiffs' benefits, the OWCP contends that aspects of Plaintiffs' lawsuits alleged illness resulting from occupational beryllium exposure and that, because the suits remained pending after the statutory dismissal deadlines, Plaintiffs were ineligible for further benefits under Section 7385d(c). (AR at 000207-000211; 000214-000217; 000621-000625; 000628-631.) Plaintiffs disagree, and argue that the OWCP's revocation of the benefits was arbitrary and capricious in that the OWCP failed to review and abide by the precedential Depenbrock Memo.

According to Plaintiffs, the Depenbrock Memo states that individuals covered under the EEOICPA may simultaneously present claims for occupational exposure through the administrative process and non-occupational exposure via a separate a tort suit. See (AR at 000187-000191.) Although the Court agrees with Plaintiffs' interpretation of the memo, the OWCP concluded that the memo was not dispositive because Plaintiffs' tort suit advanced claims for both occupational and non-occupational exposure. See (AR at 000044; 000376.) The Court's decision depends upon the accuracy of the OWCP's assessment.

To challenge the OWCP's conclusions, Plaintiffs argue that neither their long-form nor their short-form complaints allege occupational exposure. This stance is not supported by the record. Although Plaintiffs' short-form complaints do not aver occupational exposure, see (AR at 000018-000022; AR at 000506-000511), the long-form complaints make clear that Plaintiffs seek damages for injuries incurred as a result of exposure that occurred on the job and outside of

5

work.  See (AR at 000137, ¶ 65; 000142, ¶ 80(a); 000436, ¶ 65; 000445, ¶ 80(ooo).)[5]

Furthermore, Plaintiffs fail to point to any authority that would permit this Court to ignore the long-form complaints in favor of the short-form complaints.

Plaintiffs next allege that the OWCP awarded benefits to another former Reading Plant worker, Jerome Schlott, in an analogous matter and neglected to consider that case when addressing Plaintiffs' objections to the OWCP's recommendation decisions.  The record lends little support to these assertions.  Although Plaintiffs cite to a memorandum in which the OWCP indicates that the information necessary to compare the Yatsko and Schlott cases is not in the case file, see (AR at 000519-000520), the document is an internal memorandum, not an official decision issued by any adjudicating body relevant to this case.  Moreover, the OWCP's final decisions, which post-date the memorandum in question, clearly contemplate and dismiss the suggestion that Plaintiffs' and Schlott's cases are analogous.  See (AR at 000044; 000376.) More specifically, the OWCP notes that Schlott's long-form complaint, unlike the Plaintiffs', did not explicitly allege occupational exposure.[6]  See (AR at 000044; 000376); Compare, e.g., (AR at

---

[5]In their reply brief, Plaintiffs argue that they did not plead occupational exposure because they were barred from doing so under Pennsylvania law.  However, Defendants correctly point out that the EEOICPA does not excuse drafting or legal errors; it expressly prohibits otherwise eligible individuals from receiving benefits if they have filed suit against their employers for injuries sustained as a result of workplace exposure.  Therefore, Plaintiffs' argument is undermined by the references to occupational exposure in their long-form complaints.

[6]The OWCP states that the Schlott decision is not binding precedent because it was not published on the OWCP's website.  (Dft.'s Brief in Opposition to Plaintiff's Request at 22-23); see also Decisions and Orders - Division of Energy Employees Occupational Illness Compensation, http://www.dol.gov/owcp/energy/regs/compliance/Decisions/finalfabdecs.htm ("The decisions that are included in this database are considered to be of precedential value, meaning that they contain significant statements that constitute the working law . . . regarding EEOICPA benefit claims.") (visited March 31, 2010).  Plaintiff does not refute this claim.  Accordingly, even, assuming arguendo, that the Court found Plaintiffs' and Schlott's cases analogous, and that the OWCP's decision in the present matter contravened the Schlott decision, the Court's final determination would not be altered.  Irrespective of

000137, ¶ 65; 000142, ¶ 80(a); 000436, ¶ 65; 000445, ¶ 80(ooo), with AR at 000082, ¶¶ 11-12; 000084-000085, ¶¶ 21-26; AR 000087, ¶ 28; AR 000093, ¶ 46; AR 000097-98, ¶¶ 60-61, AR 000101, ¶¶ 63; AR 000107-08, ¶ 87-89.) A review of Schlott's Complaint does not call into question the OWCP's conclusion; Schlott's allegations clearly center on beryllium discharge into the residential neighborhoods adjoining the Plant.

## V. CONCLUSION

This Court's review of the OWCP's decision is a narrow one, and the Court must not substitute its own judgment for that of the OWCP. Taking into account the administrative record, the Defendants' decision to terminate the Plaintiffs' EEOICPA benefits was reasonable, supported by the evidence, and not erroneous as a matter of law. Thus, Defendants, acting in accordance with federal law, did not conduct themselves arbitrarily or capriciously. For the reasons set forth herein, the Court will affirm Defendants' denial of Plaintiffs' benefits and deny Plaintiffs' request for declaratory and injunctive relief.

An appropriate Order follows.

---

the Schlott case, it is clear that Plaintiffs, sought compensation from NGK for occupational exposure while receiving benefits from the government for the same exposure, in violation of federal law.